## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA    )
    )
       v.    )    1:11cr61
    )    **Electronic Filing**
LARRY EDWARD HAWKINS    )

## OPINION

On September 13, 2011, a grand jury returned a three count indictment charging Larry

Edwards Hawkins ("defendant") at Count One with receipt of material depicting the sexual

exploitation of a minor, from in and around August 2010 to in and around January 2011, in

violation of Tile 18, United States Code, Sections 2252(a)(2) and 2252(b)(1), at Count Two with

distribution of material depicting the sexual exploitation of a minor, from in and around August

2010 to in and around January 2011, in violation of Tile 18, United States Code, Sections

2252(a)(2) and 2252(b)(1), and at Count Three with possession of material depicting the sexual

exploitation of a minor, from in and around August 2010 to in and around January 2011, in

violation of Tile 18, United States Code, Sections 2252(a)(4)(B) and 2252(b)(2).[1] Presently

before the court is defendant's motion to suppress evidence and statements. For the reasons set

forth below, the motion will be denied.

On August 16, 2010, Investigator Jason Howell of the Ohio Internet Crimes Against

Children Task Force was investigating on-line activity in an effort uncover individuals

possessing and distributing child pornography. Investigator Howell was focusing on individuals

who were using the Gnutella peer-to-peer computer network. Use of the Gnutella Network

permitted Investigator Howell to check files being shared on the network for their secure hash

---

[1] An arrest warrant for defendant was issued on September 26, 2011. Defendant left the jurisdiction of this District prior to service of that warrant and was declared a fugitive on May 30, 2012. Defendant was returned to this District in November of 2013 after his arrest in Atlanta, Georgia.

algorithm, which is a mathematical algorithm that in effect provides a "fingerprint" for digital files. Investigator Howell was utilizing the Federal Information Processing and Digital Signature Algorithm, which produces a "SHA1" value that is unique to each file.[2]

At approximately 10:14 a.m. Investigator Howell identified a computer with an IP address of 71.74.235.104 that was sharing 2 files on the Gnutella Network. He initiated a request to browse the shared files folder being made available and upon response was permitted to obtain a list of at least 1571 shared files. He then captured their names, types, sizes and SHA1 values. At least 6 of these files had SHA1 values of files that were known or suspected to be pictures or video containing child pornography. At approximately 10:32 a.m. Investigator Howell downloaded 13 of these files and captured their names and SHA1 values. He also was able to take screen shots to verify the files were being downloaded from the above-referenced IP address.

On August 23, 2010, at 6:13 p.m. Investigator Howell directed a second browse request to the same IP address and was permitted to connect directly to that host computer. This time the operator was making available at least 1572 files for sharing. Investigator Howell captured the names, types, sizes and SHA1 values of these files. At least 8 had SHA1 values of files that were known or suspected to be pictures or video containing child pornography. He downloaded 3 of the files, capturing their names and SHA1 values. He took screen shots during the download to verify that the files came from the same IP address.

Investigator Howell previewed the 16 files before they were downloaded. Based on his training for and experience in investigating crimes against children Investigator Howell determined that some of these files were child pornography in contravention of Ohio, Pennsylvania and federal law.

---

[2] It is computationally infeasible for two computer files with different content to produce or have the same SHA1 hash value.

On August 27, 2010, a grand jury subpoena was served on Time Warner Cable seeking subscriber information for the IP address.  On September 23, 2010, Time Warner identified defendant as the subscriber of the account and indicated the account had been active since March 13, 2008.

On January 18, 2011, Pennsylvania State Police Trooper Dana Stewart presented an application for a search warrant to Pennsylvania Magisterial District Judge Paul Manzi.  Trooper Stewart incorporated the above information into an affidavit along with additional information pertaining to common characteristics and behaviors of individuals who collect child pornography.  These characteristics were based on Trooper Stewart's knowledge, experience and training in child exploitation and child pornography.  They included: collectors may receive sexual gratification, stimulation and satisfaction from contact with children and/or from fantasies about the same generated from viewing various forms of child pornography; this pornography is collected in multiple and  different media forms, such as photographs, magazines, motion pictures, videotapes, books, and slides; hard copies of the pornography often are stored at secured locations, such as a collector's home or private office; collectors typically retain their collection for many years; and collectors prefer to avoid being without their collection for any prolonged period of time.

Based on the above, Trooper Stewart's affidavit submitted to the magisterial judge asserted there was probable cause to believe the user of a computer located at defendant's address was a collector of child pornography.  It further asserted that based on the common tendencies of collectors, namely that they tend to maintain their collections at secure locations for long periods of time, and that the user had made numerous files available on the peer-to-peer network, there was probable cause to believe that evidence of the offenses of distributing, receiving and possessing child pornography would be found at defendant's address.  The affidavit included

additional legal support for the propositions that collectors of child pornography keep their collection for long periods of time and even when certain computer files have been deleted they can nevertheless be recovered through forensic examination, thus minimizing the impact of the passage of 5 months between Investigator Howell's discoveries and the application for the warrant.

Magisterial Judge Manzi issued the search warrant on January 18, 2011. It authorized the seizure of: all computer hardware, including all equipment used to process and store digital data and related communication devices such as modems, cables, connections, and recording equipment; and any device used to restrict access to the same. It also authorized the seizure of: any software contained within the hardware; all computer documentation that accompanied the purchase of the above and may have been used to configure the computer system(s) discovered and seized; passwords and data security devices; and documents of any nature that may relate to passwords, accomplices or co-conspirators as well as ownership of the residence and the individuals living there.

Trooper Stewart and three other state police officers executed the warrant that same day. They arrived at defendant's residence. Trooper Stewart and Corporeal Pearson were in plain clothes but had their service pistols in concealed holsters. The other two officers were in uniform with standard service firearms on their waists. Every officer wore a raid vest.

No one was at defendant's home, which was located in a condominium complex. Trooper Stewart telephoned defendant at work, informed him that they were at his home with a warrant and asked in a calm voice with normal tone if defendant would come to the residence and let them in. Defendant agreed to do so and arrived approximately 20 minutes later. Trooper Stewart did not discuss the nature of the warrant with defendant during their telephone conversation.

Defendant was patted down for weapons when he arrived. Defendant opened the door and permitted the officers to gain access. The officers cleared the home. Trooper Stewart gave the warrant to defendant and told him that he would answer any questions about the warrant once defendant had read it. Defendant sat down in the living room and began to read the warrant. Corporeal Pearson and the two troopers in uniform went about the home searching for items to be seized while Trooper Stewart and defendant remained on the main floor and generally in the living room area.

Trooper Stewart then explained to defendant that he was not under arrest and was free to leave. He advised that he would answer any questions defendant had about the warrant. He was the only officer interacting with defendant. Defendant did not express any lack of understanding or confusion about what was transpiring or being communicated. He did not appear to be under the influence of any drug or alcohol.

Trooper Stewart began to ask defendant general questions about his personal identification. These included his full name, age, date of birth, social security number, current address, height, weight, place of birth, hair color, eye color, marital status, employer and so forth. The conversation spanned about 30 to 35 minutes of the hour it took to execute the warrant. The conversation remained calm and cordial during the entire time. Defendant never expressed a desire to end the conversation, speak to a lawyer or leave the premises. Defendant was not restrained in any way.[3]

The conversation between Trooper Stewart and defendant eventually included questions relating to the reason the police were executing the warrant. Just prior to the officers leaving, defendant admitted that he was a collector of adult pornography and he had amassed a large

---

[3] Trooper Stewart jotted down rough notes during the course of the conversation. These notes have been reviewed by the court pursuant to an order on defendant's motion requesting that they be produced for the purpose of evaluating the credibility of Trooper Stewart's testimony. See Memorandum Opinion and Order of December 15, 2014 (Doc. No.s 53, 54). The facts as set forth in this opinion have been rendered after that review.

collection of it. He further advised that if there was any child pornography in his collection, it would be a small percentage of his overall collection and he asked Trooper Stewart to take that into consideration in deciding whether to file charges.[4]

Defendant was presented with an inventory receipt when Corporeal Pearson and the uniformed offices were finished. Defendant signed it and received a copy of it. Defendant was not placed under arrest or restrained in any way. The officers left and defendant remained in his residence.

Defendant asserts the warrant was constitutionally deficient for two reasons: it was overly-broad and non-particular in describing the things to be seized, thus amounting to a general warrant; and it was based on stale information and thus lacking in probable cause. Defendant further asserts that the unconstitutional search tainted any statements he made during the execution of the warrant and the statements were obtained in violation of <u>Maranda v. Arizona</u>, 384 U.S. 436 (1966) in any event. The government maintains that the warrant was sufficiently specific and particular and based on information that was current enough to provide probable cause.

Defendant's contention that the warrant was a general one prohibited by the Fourth Amendment because it was overly-broad and non-particularized is unavailing. Defendant asserts that because (1) the warrant was based on the existence of one particular computer sharing 16 specifically identified files on a peer-to-peer network and (2) it authorized the seizure of every type of electronic equipment in the residence, it "did not tailor the area to be seized to the probable cause on which the warrant was based." Defendant's Motion to Suppress (Doc. No. 30) at 4. Defendant further asserts that the affidavit failed to contain an adequate basis for the magisterial judge to conclude that the files shared on the network would be retained on the

---

[4] Trooper Stewart's notes do not reference this statement. The court nevertheless finds for the purpose of resolving defendant's motion to suppress that the statement was made as reflected above.

computer hard drive or recovered therefrom through forensic examination and it merely speculated that because that sharing had occurred, then the computer utilized "must have more files that can be discovered later." Supplemental Motion to Suppress (Doc. No. 45) at 3. The affidavit was created with generic classifications contained on Trooper Stewart's computer and contained numerous terms and definitions that had no application to the activity uncovered by Investigator Howell, further evidencing the general nature of the warrant and the uncabined discretion provided through its authorization. Id. at 4.

It has long been settled that a "warrant[ ] must 'particularly describe[e] the place to be searched and the persons or things to be seized.'" United States v. Karrer, 460 F. App'x 157, 161 (3d Cir. 2012) (quoting United States v. Yusuf, 461 F.3d 374, 393 (3d Cir. 2006) (second alteration in original) (quoting U.S. Const. amend. IV)). And the failure to meet this settled Fourth Amendment tenet requires the suppression of "all evidence seized pursuant to [the] general warrant." Id. (quoting United States v. Christine, 687 F.2d 749, 758 (3d Cir. 1982).

"Indiscriminate searches and seizures conducted pursuant to general warrants . . . were the immediate evils that motivated the framing and adoption of the Fourth Amendment." Christine, 687 F.2d at 756 (quoting Payton v. New York, 445 U.S. 573, 583 (1980)). These warrants, also known as writs of assistance in colonial times, "were issued upon 'mere suspicion' and gave customs officials blanket authority to search where they pleased for goods imported in violation of British tax laws." Id. (citing Boyd v. United States, 116 U.S. 616, 625 (1886)).

The terms delineating the scope of the warrants' authorization "serve to limit the scope of the intrusion." Christine, 687 F.2d at 756 (citing Walter v. United States, 447 U.S. 649, 656 (1980) and United States v. Poller, 43 F.2d 911, 914 (2d Cir. 1930) (Hand, J.)). "The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing

another." Christine, 687 F.2d at 756 (quoting Marron v. United States, 275 U.S. 192, 196 (1927)).

A warrant offends the particularity clause and becomes a general one when it "vest[s] the executing officer with unbridled discretion to conduct an exploratory rummaging . . . in search of criminal evidence." Karrer, 460 F. App'x at 161 (quoting United States v. Leveto, 540 F.3d 200, 211 (3d Cir. 2008) (quoting Christine, 687 F.2d at 753)). Examples of such unbridled authority have included "general warrants" that authorized "searches for and seizures of: 'smuggled goods,' as was provided by the notorious writs of assistance, Boyd v. United States, 116 U.S. 616, 624, 6 S. Ct. 524, 29 L. Ed. 746 (1886); 'obscene materials,' Marcus v. Search Warrant, 367 U.S. 717, 81 S. Ct. 1708, 6 L. Ed.2d 1127 (1961); 'books, records, pamphlets, cards, receipts, lists, memoranda, pictures, recordings and other written instruments concerning the Communist Party of Texas,' Stanford v. Texas, 379 U.S. 476, 85 S. Ct. 506, 13 L. Ed.2d 231 (1965); 'illegally obtained films,' United States v. Cook, 657 F.2d 730 (5th Cir. 1981); and 'stolen property,' United States v. Giresi, 488 F. Supp. 445 (D.N.J. 1980), aff'd mem., 642 F.2d 444 (3d Cir. 1981), cert. denied, 452 U.S. 939, 101 S. Ct. 3081, 69 L. Ed.2d 953 (1981); United States v. Burch, 432 F. Supp. 961 (D. Del. 1977), aff'd mem., 577 F.2d 729 (3d Cir. 1978)." Christine, 687 F.2d at 753.

Defendant's contention that the search warrant lacked meaningful limits on the executing officers' authority is misplaced. The warrant identified the specific place to be searched and the specific items of property that could be searched for and seized. It was limited to the "two story apartment" belonging to defendant. The items to be searched for and seized were limited to computer hardware, computer processing units and storage devices, input and output devices that could be used with such equipment, devices or equipment used to restrict access to the same, software that was or could be used in conjunction therewith and any accompanying

documentation and information needed to understand how such computer units had been configured for operation or restricted to limit access. The statutory violation was identified as 18 Pa. C. S. § 6312 - "Sexual Abuse of Children." And the nature of the contraband believed to be possessed in violation of that statue was identified in specific detail in the accompanying affidavit. A 48 hour time limit for executing the warrant was set forth. These limitations sufficiently particularized the property to be searched, and the search to be conducted was limited to the instrumentalities that were likely used to violate 18 Pa. C. S. § 6312 in the manner set forth in the affidavit. What ultimately could be seized was limited to instrumentalities likely to contain the the actual fruits and evidence of such a violation.

Contrary to defendant's assertions, such limitations were more than sufficient to keep the warrant from running afoul of the prohibition against general warrants. Compare Karrer, 460 F. App'x at 161 (a warrant to seize images of child pornography obtained pursuant to images discovered during initial search for evidence involving unlawful contact with a minor was not a general warrant where it "identified particular devices and file types to be searched for evidence of a specific statutory offense.") (citing United States v. Yusuf, 461 F.3d 374, 395 (3d Cir. 2006)); United States v. Juarez, 2013 WL 357570, *3 (E.D. N.Y. Jan. 29, 2013) ("a warrant satisfies the particularity requirement when it sufficiently identifies and describes the items to be searched and seized and links that evidence to the specific criminal activity being investigated. When a warrant does so, it 'ensures that the search will be carefully tailored to its justifications, and will not take on the character of wide-ranging exploratory searches.'") (quoting United States v. Bianco, 998 F.2d 1112, 1122 (2d Cir. 1993)). The executing officers were not given unbridled discretion to engage in exploratory rummaging in search of any evidence of criminal wrongdoing. They were authorized only to search for and seize evidence of the violation of the criminal offense of sexual abuse of children as set forth in the affidavit, namely the receipt,

possession and distribution of images of child pornography. Consequently, the warrant was not a general one in violation of the Fourth Amendment. Compare Karrer, 460 F. App'x at 162 (Section 6318 does not invite value judgments in deciding what to search for because it sufficiently defines the conduct falling within its ambit and thus cabins a search for data evidencing such conduct).

Similarly, "the warrant's authorization to search and seize virtually all computer-related items in [Hawkin's] home does not invalidate the warrant." Karrer, 460 F. App'x at 161 (citing in support United States v. Stabile, 633 F.3d 219, 234 (3d Cir.2011); and United States v. Ninety–Two Thousand Four Hundred Twenty–Two Dollars and Fifty–Seven Cents ($92,422.57), 307 F.3d 137, 149–50 (3d Cir. 2002) (upholding a similar warrant as "indubitably broad," but not unconstitutionally general)). A warrant is to be read as a whole and its supporting affidavit likewise "is to be read in its entirety and in a common sense, nontechnical manner." Id. (quoting United States v. Miknevich, 638 F.3d 178, 182 (3d Cir.2011) and citing United States v. Johnson, 690 F.2d 60, 64 (3d Cir.1982) ("When a warrant is accompanied by an affidavit that is incorporated by reference, the affidavit may be used in construing the scope of the warrant.").

In this regard the warrant's authorization to seize and search "all computer hardware, including . . . any equipment that can be used to . . . store, conceal or transmit electronic . . . data" and all processing units, peripheral input and output devices, software, and the information needed to understand and access such electronic equipment and storage devices, was not authority to search these items of property for evidence of any criminal offense, but was particularly limited to the equipment and devices that could be used to access the images and data evidencing the criminal offense of sexual abuse of children as prohibited by 18 Pa. C. S. § 6312. Furthermore, the affidavit explained that the volume of storage, the ability to disguise file content, the myriad of ways that peripheral devices can be used to enter or retrieve stored

electronic information and the highly technical processes involved in searching stored electronic data created the need to seize all computer storage devises, related software, documentation and data security devices and conduct a sufficient search in a controlled setting in order to find the identified contraband and/or evidence of defendant's receipt, possession and distribution of it. Thus, the warrant did not authorize the search of all electronic property that could be used to connect and interact on the internet for evidence of any wrongdoing such as tax evasion, espionage, or mail fraud, for example; instead, when read as a whole the warrant's authorization was limited to the seizure and subsequent searching of discovered computers and electronic storage devices which could be used singularly or in combination to store data containing the types of unlawful images identified in the affidavit, i.e., existing child pornography. Contrary to the arguments of defendant, such boundaries provide meaningful limitations on the officers' discretion to search defendant's digital devices.

Defendant's contention that the warrant constitutionally was overbroad likewise falls short of the mark. "An overly broad warrant 'describe[s] in both specific and inclusive generic terms what is to be seized,' but . . . authorizes the seizure of items as to which there is no probable cause." Karrer, 460 F. App'x at 162 (quoting Ninety–Two Thousand, 307 F.3d at 149 (quoting Christine, 687 F.2d at 753–54)).

Here, the warrant does not suffer from such a shortcoming. It did describe the computers and related electronic access and storage items to be seized in specific and inclusive generic terms. But the seizure of those items and the search of them was limited to images possessed in violation of the laws prohibiting the sexual abuse of children and evidence of the unlawful possession of such contraband. And there was probable cause to believe that defendant's computers and electronic data storage devices contained such contraband and/or evidence of the unlawful receipt, possession and distribution of such contraband.

It is well-established that the role of a reviewing court in analyzing an issuing judge's initial probable cause determination is to assess whether the issuing judge had a substantial basis for concluding that probable cause existed. <u>Illinois v. Gates</u>, 462 U.S. 213, 238 (1983). The United States Court of Appeals for the Third Circuit has explained that "[reviewing courts] are constrained to determine only whether the affidavit provides a sufficient basis for the decision the issuing judge actually made" and must refrain from engaging in *de novo* review as to whether probable cause actually existed. <u>United States v. Jones</u>, 994 F.2d 1051, 1057 (3d Cir. 1993) (recognizing that reviewing courts must refrain from making their own assessment as to probable cause). If a substantial basis for the issuing judge's determination exists, then that finding must be upheld notwithstanding the fact that "a different [issuing] judge might have found the affidavit insufficient to support a warrant." <u>United States v. Conley</u>, 4 F.3d 1200, 1205 (3d Cir. 1993).

An issuing judge's finding of probable cause "should be paid great deference by reviewing courts." <u>Gates</u>, 462 U.S. at 236 (quoting <u>Spinelli v. United States</u>, 393 U.S. 410, 419). This is not to say, however, that reviewing courts should simply "rubber stamp [an issuing judge's] conclusions." <u>United States v. Whitner</u>, 219 F.3d 289, 296 (3d Cir. 2000). Case law makes clear that this deferential standard urges that "the resolution of doubtful or marginal cases in this area [ ] be largely determined by the preference to be accorded to warrants." <u>Jones</u>, 994 F.2d at 1055 (citing <u>United States v. Ventresca</u>, 380 U.S. 102, 109 (1965)); <u>see</u> <u>also</u> <u>United States v. Stearn</u>, 597 F.3d 540 (2009) (acknowledging the Supreme Court's direction that cases which present close calls should be resolved in favor of upholding the warrant) (citing <u>Gates</u>, 462 U.S. at 237 n.10).

A search warrant is supported by probable cause when the attached affidavit sets forth sufficient facts and circumstances to justify a reasonable belief that a search of the specified

premises will uncover evidence of criminal wrongdoing.  See, e.g., United States v. Deaner, 1

F.3d 192, 196 (3d Cir. 1993) (citing Illinois v. Gates, 462 U.S. 213, 236 (1983)).


In assessing whether probable cause exists, an issuing judge must "make a practical,

common-sense decision" that there is a "fair probability that . . . evidence of a crime will be

found in a particular place."  Gates, 462 U.S. at 238.  The Supreme Court has described probable

cause as a "fluid concept-turning on the assessment of probabilities in particular factual

contexts."  Id. at 232.  Probable cause does not require direct evidence linking the crime with the

place to be searched.  Stearn, 597 F.3d at 554 (opining that while it would be ideal for every

affidavit to contain direct evidence, a magistrate may issue a search warrant without it).  Courts

have recognized that probable cause "can be, and often is, inferred from 'the type of crime, the

nature of the items sought, the suspect's opportunity for concealment and [the] normal inferences

about where a criminal might hide [evidence].'"  Id. at 554 (citing Jones, 994 F.2d at 1056

(quoting United States v. Jackson, 756 F.2d 703, 705 (9th Cir. 1985)).

When analyzing the existence of probable cause, the focus must be on "factual and

practical considerations of everyday life on which reasonable and prudent men, not legal

technicians, act."  Gates, 462 U.S. at 231 (probable cause is a "practical, nontechnical

conception").  The issuing judge must use common-sense and read the supporting affidavit in its

entirety.  Conley, 4 F.3d at 1206 ("[S]tatements in an affidavit may not be read in isolation-the

affidavit must be read as a whole.").  An issuing judge is permitted to make reasonable

inferences from the information in the warrant application.  United States v. Loy, 191 F.3d 360,

366 (3d Cir. 1999) ("In making the probable cause determination, the issuing magistrate may

draw reasonable inferences from the material provided in the warrant application.") (quoting

United States v. Rowland, 145 F.3d 1194, 1205 (10th Cir. 1998)).  The issuing judge also is

entitled to give "considerable weight to the conclusions of law enforcement officers with regard to where evidence of a crime is likely to be found . . . ." Whitner, 219 F.3d at 296 (quoting United States v. Caicedo, 85 F.3d 1184, 1192 (6th Cir. 1996)).

The affidavit supplied a substantial basis for Judge Manzi to conclude that sufficient facts and circumstances had been presented to raise a fair probability that evidence of the images of child pornography detailed in the affidavit would be found in the computers and data storage devices located at defendant's residence. The affidavit relayed that Investigator Howell had interacted with a computer using an IP address that was associated with defendant's residence. On two separate occasions Investigator Howell had interacted with that computer and was able to verify on the first occasion that 1571 files were being shared on the network and 1572 files were being made available on the second. Several of the files had hash values that were known or suspected of containing child pornography. Investigator Howell downloaded 16 of these files from the computer at defendant's residence. Screen shots were captured during the downloading process to verify that the files were being made available from defendant's IP address. Based on a pre-download review of the files, Investigator Howell determined from his training and experience that a number of the 16 files were child pornography prohibited by federal and state law.

Trooper Stewart further attested that his training, field experience and gained expertise had verified certain common characteristics of collectors of child pornography, including that they often receive personal gratification and/or stimulation from their collection, the contraband is collected in multiple and different media forms; permanent copies of the pornography often are stored at secured locations, such as a collector's home; collectors typically retain their collection for many years; and collectors prefer to avoid being without their collection for any prolonged period of time. He also supplied additional legal case law that recognized the

propositions that collectors of child pornography keep their collection for long periods of time and even when certain computer files have been deleted they can nevertheless be recovered through forensic examination.

The affidavit provided sworn facts that directly connected a computer at defendant's residence with the offering and distribution of multiple image files having hash values equivalent to those known or suspected to be child pornography in violation of Pennsylvania law. The investigator downloaded 14 complete files and 3 partial files from that computer. The investigator's preview of those files lead him to conclude that based on his training and experience some of the files were child pornography possessed in violation of Ohio, Pennsylvania and federal law. Those files had been made available on a file-sharing network for others to preview and obtain if desired. Thus, there was probable cause to believe that a computer within defendant's residence had been used to receive, possess and distribute child pornography and an individual within defendant's residence was a collector of child pornography.

Moreover, Judge Manzi was supplied with known common characteristics of collectors of child pornography that had been verified through Trooper Stewart's training and experience as well as the training and experience of other officers with whom he had shared and discussed investigative experiences. These collective experiences provided a basis to believe that the collector of child pornography within defendant's residence would have access to the acquired collection through secured means located in the residence, such as a computer and related electronic data storage devices configured to restrict access, and that individual would seek to maintain that access on an ongoing basis. Of course, Judge Manzi was permitted to draw the inference that the individual with computer access at defendant's residence likewise had behaved in a manner consistent with these common characteristics and credit Trooper Stewart's

conclusion that probable cause existed to search for and seize the electronic storage devices at that location because it was probable that forensic analysis of those devices would reveal the contraband and evidence of its receipt, possession and distribution. See Whitner, 219 F.3d at 296.

Moreover, the fact that the warrant authorized the seizure of devices and files that were unrelated to the specified criminal offenses did not render the warrant constitutionally overbroad. "[A]s a practical matter, when a search requires review of a large collection of items, 'it is certain that some innocuous [items] will be examined, at least cursorily, in order to determine whether they are, in fact, among those [items] authorized to be seized.'" Karrer, 460 Fed. Appx. at 162 (quoting Stabile, 633 F.3d at 234 (quoting Andresen, 427 U.S. at 482 n. 11)) (alterations in original). Such incidental seizure and cursory examination does not make a warrant overbroad in violation of the Fourth Amendment where the innocuous items of personal property cannot readily be distinguished from the property for which there is probable cause to search and seize and there is probable cause to believe that the suspected contraband likely has been intermingled and/or concealed within the collection of items authorized to be seized. Id.

Trooper Stewart explained in the affidavit that computer storage devices can store tremendous volumes of information; that suspects may try to conceal evidence of criminal conduct through deceptive labeling or random storage; searching for such concealed data is a highly technical process requiring the use of expert skills in a controlled environment; and that searching conducted in that manner can recover hidden, erased, compressed and/or encrypted data/evidence. He further explained that his experience had verified that searching for electronic data in that manner "commonly requires investigators to seize all of a computer system's input/output peripheral devices, related software, documentation, and data security devices (including passwords) so that a qualified computer expert can accurately retrieve the system's

data in a laboratory or other controlled environment" because (1) access to the central processing unit and all storage devices is essential to retrieving any data from the computer system and (2) there is significant variation in the compatibility of peripheral devices. In this regard, such searches are complex and time-consuming; and in order to accomplish an accurate retrieval, the analyst needs to be able to re-configure the entire system as it was operating in order to extract the information within the system, which includes having access to the relevant system software, applications software, instructions manuals or related documentation and/or data security devices.

It follows that the very search to be undertaken based on probable cause required the use of numerous items that are not in themselves contraband. These items were integrated with and a part of a larger collection of items for which there was probable cause. They could not be readily or even easily distinguished from the contraband and related evidence of the suspected criminal activity. There was probable cause to believe that the contraband had been stored and likely hidden within the collection of these electronic items. And as Trooper Stewart further emphasized, there was probable cause to believe that many of these items were instrumentalities of the crimes for which there was probable cause. Under these circumstances, the fact that the warrant authorized the potential seizure of a number of innocuous items that were unrelated to the specified criminal offenses did not render the warrant constitutionally overbroad.

Defendant's contention that the warrant was predicated on stale information equally is misplaced. It is beyond reproach that the "[a]ge of the information supporting a warrant application is a factor in determining [the existence of] probable cause." United States v. Harvey, 2 F.3d 1318, 1321 (3d Cir. 1993) (citing United States v. Forsythe, 560 F.2d 1127, 1132 & n. 6 (3d Cir.1977) and United States v. McNeese, 901 F.2d 585, 596 (7th Cir. 1990)); accord United States v. Zimmerman, 277 F.3d 426, 434 (3d Cir. 2002) (same). "If too old, the

information is stale, and probable cause may no longer exist." Harvey, 2 F.3d at 1321 (citing McNeese, 901 F.2d at 596). But the age of the information does not in itself determine staleness. Instead, the nature of the crime and the type of evidence must be considered. Id. (citing United States v. Tehfe, 722 F.2d 1114, 1119 (3d Cir. 1983), cert. denied, 466 U.S. 904 (1984); Forsythe, 560 F.2d at 1132; and United States v. McCall, 740 F.2d 1331, 1135-36 (4th Cir. 1984)); accord Zimmerman, 277 F.3d at 434 (same); United States v. Williams, 897 F.2d 1034, 1039 (10th Cir. 1990), cert. denied, 500 U.S. 937 (1991) ("The determination of probable cause is not merely an exercise in counting the days or even months between the facts relied on and the issuance of the warrant.")).

Here, the mere passage of five months from the activity on the network resulting in the sharing and thus distribution of child pornography and the application for the warrant did not render the information in the affidavit stale. As emphasized above, "staleness is not a matter of mechanically counting days." United States v. Vosburgh, 602 F.3d 512, 528 (3d Cir. 2010) (citing Zimmerman, 277 F.3d at 434). Instead, the import of the date of the information must be assessed in context and through the totality of the information provided to the judicial officer.

The United States Court of Appeals for the Third Circuit has repeatedly "recognized [that] persons with an interest in child pornography tend to hoard their materials and retain them for a long time." Vosburgh, 602 F.3d at 528 (citing Shields, 458 F.3d at 279 n. 7 ("collectors of child pornography often store their material and rarely discard it"); Harvey, 2 F.3d at 1322–23 (rejecting staleness claim in part due because "pedophiles rarely, if ever, dispose of sexually explicit material")). The illegality of the material as well as the difficulty and risk in obtaining it make it unlikely for a child pornography collector to discard such material. Vosburgh, 602 F.3d at 528 (citing Zimmerman, 277 F.3d at 434). In other words, information concerning the receipt

and distribution of child pornography "has a relatively long shelf life" and should not be quickly deemed to be stale.  Id.

The affidavit supplied Judge Manzi with facts and circumstances giving rise to probable cause to believe an individual with access to a computer within defendant's residence was a collector of child pornography.  It likewise supplied probable cause to believe the individual had been actively sharing such material on a peer-to-peer network.  It further reiterated the recognized principle that "collectors of child pornography keep their collection for long periods of time" and explained that even if the contraband had been deleted, a forensic examination can recover such files long after they have been erased.  These propositions are well supported in the established precedent.  See, e.g., United States v. Paull, 551 F.3d 516, 522 (6th Cir. 2009) ("the same time limitations that have been applied to more fleeting crimes do not control the staleness inquiry for child pornography") (cited with approval in Vosburgh, 602 F.3d at 529); Vosburgh, 602 F.3d at 529 ("Images stored on computers can be retained almost indefinitely, and forensic examiners can often uncover evidence of possession or attempted possession long after the crime has been completed.").  Thus, there was a substantial basis for Judge Manzi to conclude that probable cause existed to believe that contraband and evidence of a section 6312 offense was still within the items authorized to be seized through the warrant.

Judge Manzi's task was to make a practical, commonsense decision as to whether there was a fair probability that evidence of the receipt, possession and/or distribution of child pornography would be found within a computer system located in defendant's residence five months after someone in that residence had participated in making such materials available on the internet.  Judge Manzi had a substantial basis for concluding that such probable cause existed.  His determination is in accord with the growing body of case law addressing staleness in the context of child pornography offenses involving the use of the internet.  See, e.g.,

Vosburgh, 602 F.3d at 528-29 (rejecting staleness claim based on four month gap between attempts to obtain child pornography via the internet and issuance of the warrant); Shields, 458 F.3d at 279 n.7 (nine-month gap between the warrant application and potential participation by the defendant in internet child pornography groups did not render the information supporting the affidavit stale); United States v. Morales–Aldahondo, 524 F.3d 115, 119 (1st Cir. 2008) (rejecting argument that three-year gap between date of download and warrant application rendered information stale where testimony from the "government's knowledgeable witness" indicated that child pornography collectors "do not quickly dispose of their cache"); United States v. Irving, 452 F.3d 110, 125 (2d Cir. 2006) (holding that twenty-two month old information in affidavit in support of warrant to search computer for child pornography was not stale); United States v. Lemon, 590 F.3d 612, 615–16 (8th Cir. 2010) (upholding probable cause determination despite eighteen-month gap between the warrant application and the internet activity described in the affidavit that suggested possession of child pornography); United States v. Lacy, 119 F.3d 742, 745 (9th Cir. 1997) ("We are unwilling to assume that collectors of child pornography keep their materials indefinitely, but the nature of the crime, as set forth in this affidavit, provided 'good reason[ ]' to believe the computerized visual depictions downloaded by Lacy would be present in his apartment when the search was conducted ten months later."); United States v. Terry, 522 F.3d 645, 650 n. 2 (6th Cir. 2008) ("We do not believe that the passage of five months between the sending of the intercepted e-mail messages and the execution of the warrant changes the probable cause calculus much, if at all. Images typically persist in some form on a computer hard drive even after the images have been deleted and, as ICE stated in its affidavit, such evidence can often be recovered by forensic examiners."). Thus, the record fails to support defendant's contention that the highlighted internet activity occurring in August of 2010 was stale as of January 18, 2011, when Trooper Stewart applied for the warrant.

Defendant's efforts to gain suppression of the statements he made to Trooper Stewart on January 18, 2011, likewise are wide of the mark. First, as explained above, the application for and issuance of the warrant did not violate defendant's Fourth Amendment rights. Consequently, the statements are not tainted or otherwise the fruit of the poisonous tree.

Moreover, the statements was not obtained in violation of <u>Miranda</u>. <u>Miranda</u> warnings are required only where a defendant is subjected to "custodial interrogation." The United States Court of Appeals for the Third Circuit has emphasized that the concept of "custodial interrogation" is not susceptible of an exact definition; thus, the determination of whether statements are made pursuant to that form of interrogation must be made on a case-by-case basis. <u>United States v. Leese</u>, 176 F.3d 740, 743 (3d Cir. 1999) (citing <u>Steigler v. Anderson</u>, 496 F.2d 793, 798 (3d Cir. 1974) and <u>United States v. Clark</u>, 425 F.2d 827 (3d Cir.), <u>cert.</u> <u>denied</u>, 400 U.S. 820 (1970).

As an initial matter, it is important to recognize that the Supreme Court has cautioned that "custody" is not be read too broadly: "[P]olice officers are not required to administer <u>Miranda</u> warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because . . . the questioned person is one whom the police suspect." <u>Oregan v. Mathiason</u>, 429 U.S. 492, 495 (1977); <u>accord</u> <u>Steigler v. Anderson</u>, 496 F.2d 793, 799 (3d Cir. 1974) ("the Supreme Court, in <u>Orozco v. Texas</u>, 394 U.S. 324 . . . (1969), erased any doubt that custodial interrogation may occur outside the police station. Equally beyond doubt is that custodial interrogation does not necessarily ensue merely because police questioning occurred at a police station.").

Custodial interrogation occurs when law enforcement officers initiate questioning "after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." <u>United States v. Vidal</u>, 85 F. App'x 858, 861 (3d Cir. 2004) (quoting <u>Rhode</u>

Island v. Innis, 446 U.S. 291, 298 (1980) (quoting Miranda, 384 U.S. at 444)).  In determining whether an individual was in custody or otherwise sufficiently restrained, the ultimate inquiry is: "whether there [was] a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." California v. Beheler, 463 U.S. 1121, 1125 (1983) (quoting Oregon v. Mathiason, 429 U.S. 492, 495 (1977) (per curiam)); Steigler, 496 F.2d at 798 (the test is whether the government has in some meaningful way imposed restraint on a person's freedom of action).

Whether an individual has been placed into custody "depends on the objective circumstances of the interrogation, not on the subjective views harbored by the interrogating officers or the person being questioned." Stansbury v. California, 511 U.S. 318, 323 (1994). The inquiry is focused on whether "a reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave." Thompson v. Keohane, 516 U.S. 99, 112 (1995).

Where, as here, there has not been an overt arrest when the statements are made, to have custodial interrogation "something must be said or done by the authorities, either in their manner of approach or in the tone or extent of their questioning, which indicates they would not have heeded a request to depart or to allow the suspect to do so." Steigler, 496 F.2d at 799 (quoting United States v. Hall, 421 F.2d 540, 545 (2d Cir.1969), cert. denied, 397 U.S. 990 (1970)); accord Mathiason, 429 U.S. at 492.  Common objective factors to consider are: whether the officers told the suspect that he was under arrest or free to leave; the location of the interrogation; the length of the interrogation; whether officers used coercive tactics such as hostile tones of voice, the display of weapons or the use of physical restraint; and whether the suspect voluntarily submitted to questioning. United States v. Willaman, 437 F.3d 354, 359 (3d Cir. 2006) (collecting cases).

Consideration of the context and circumstances of defendant's encounter with Trooper Stewart and the other officers on January 18, 2011, supports a determination that defendant was not in custody or otherwise subjected to custodial interrogation when he made the statements he seeks to suppress. First, Trooper Stewart called defendant and asked if he would come to the residence and let them in. Defendant agreed to do so. Their exchange was cordial and without emotional excitement.

Second, defendant received a copy of the warrant and was given an opportunity to review it before Trooper Stewart had any conversation about the warrant beyond reference to the fact that the officers were there to execute it. Only Trooper Stewart interacted with defendant and defendant did not ask any questions about the warrant or express any confusion about why the officers were there. After defendant read the warrant Trooper Stewart told him he was not under arrest and was free to leave. Trooper Stewart then volunteered to answer any questions defendant might have and defendant elected to stay and carry on a conversation with Trooper Stewart.

Third, the interaction between defendant and Trooper Stewart was conducted in the living room area of defendant's residence. Defendant was free to move about within his residence during the time the officers were present. The conversation remained calm and cordial during the entire time and defendant never expressed a desire to end the conversation, speak with a lawyer, or leave. Nor did defendant express any reservation about answering any of Trooper Stewart's questions or continuing with their conversation.

Fourth, the execution of the warrant lasted less than an hour. The conversation between Trooper Stewart and defendant spanned 30 to 45 minutes of this time.

Fifth, while all officers wore a raid vest and were armed, no officer displayed his weapon in a manner that might have created a hostile or threatening atmosphere. No officer raised his

voice or otherwise became confrontational. Defendant's movement was not restricted and he was not restrained in any way during the entire time.

Finally, defendant's statements were made voluntarily and with an understanding that he was not obligated in any way to continue with the conversation. Defendant did not subjectively believe that he had any obligation to reveal the information he imparted to Trooper Stewart and he was not aware of any facts that objectively suggested he was in custody or was otherwise being compelled to carry on a conversation with Trooper Stewart.

The above make clear that from an objective viewpoint an individual would not have reason to believe he or she was not free to leave or discontinue all further interaction with the law enforcement officers. In other words, defendant was not subjected to custodial interrogation and defendant's statements cannot be suppressed based on a failure to receive <u>Miranda</u> warnings.

For the reasons set forth above, defendant's motion to suppress will be denied. An appropriate order will follow.

<u>Date: December 19, 2014</u>

s/David Stewart Cercone
David Stewart Cercone
United States District Judge

cc:     Christian A. Trabold, AUSA
        Bruce S. Harvey, Esquire
        Jennifer S. Hojna Hanson, Esquire

        (*Via CM/ECF Electronic Mail*)